UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-61416-CIV-ROSENBAUM/DUBÉ

KENNETH L. MCKINNEY,

      Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the

Plaintiff (D.E. # 19) and the Motion for Summary Judgment filed by the Defendant (D.E. #22)

pursuant to a Clerk's Notice of Magistrate Judge Assignment entered by the Clerk of Court, United

States District Court for the Southern District of Florida. The issue before the Court is whether the

record contains substantial evidence to support the denial of benefits to the Plaintiff, Kenneth L.

McKinney (hereinafter "McKinney" or "Plaintiff").

## I. FACTS

McKinney filed an application for supplemental security income benefits on June 11, 2009.

(R. 97-100).[1] The application, which asserted disability as of December 1, 2008, was denied initially

and on reconsideration. (R. 52-57, 62-63). Following a hearing on October 26, 2010, (R. 31-51), the

ALJ issued a decision denying the request for benefits. (R. 9-19). A request for review filed with

the Appeals Council was denied. (R. 1-4).

---

1. All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

The Plaintiff, age 58 at the time of the hearing on October 26, 2010, testified he was last examined by a physician "a couple of years ago" at the request of the Social Security Administration. (R. 39, 52).  The Plaintiff further stated the last time he received medical care was in 2002 or 2003 after "neck fusion" surgery in Indiana, which care included an x-ray and 5 to 6 weeks of therapy. The Plaintiff asserted he required medical treatment for his pain but did not feel that his condition could be treated to full improvement. (R. 40).

McKinney testified he did not have access to painkillers and had previously believed that surgery would be a cure for his problems.  According to the Plaintiff, the doctors had advised him that if he continued to do things with his left arm, the results of his fusion surgery could be reversed. The Plaintiff asserted he was unaware of medical programs that were available to indigent people in need of medical care and had not sought any medical programs for medical care.  McKinney stated he did not feel that there was anything else he required aside from painkillers stating, "...I don't feel that there's anything that could take care of what I have, actually.  Because it's just old injuries and problems.  And I don't know if they could really be fixed."  The Plaintiff further stated the doctors who treated him in Indiana had not told him he needed further care. (R. 41).

Additionally, McKinney claimed he graduated from high school and completed welding courses. The Plaintiff asserted when he was approximately 28 years old he was involved in a motor vehicle accident whereby his car was hit by a truck, resulting in a 32-day hospital stay, broken bones, a head injury, a collapsed lung, and a broken or fractured pelvis. (R. 42).  The Plaintiff testified a metal plate was attached to his pelvis and asserted he had also broken the ball of his hip, bruised his brain, broken ribs, a broken collar bone and a broken right wrist. (R. 42-43).  The Plaintiff testified he had a bone removed from his right wrist that did not heal. (R. 43).

According to the Plaintiff, he is left-handed and while he was in the hospital, he had been unconscious for 14 days. McKinney testified after the accident he was unable to remember the events of the accident for 10 to 15 years . (R. 43). The Plaintiff further stated after the accident he was unable to go back to the type and kind of work he had done, but he "tried doing things" and was unsuccessful. (R. 44).

The Plaintiff claimed after he was married he had difficulties with numbness from his shoulder extending to his left hand. McKinney further claimed he underwent pressure treatment for his neck that resulted in temporary relief. The Plaintiff stated portions of his spine were fused together and although the surgery had temporarily improved his condition, small repetitious movements caused numbness and a burning pain in his left and right hand, and left arm. (R. 44).

Additionally, McKinney asserted he could lift 15 to 20 pounds, however, such movement would result in instant pain running through his shoulder and arm. The Plaintiff stated he had difficulty sleeping and slept with his left arm over the side of the bed to reduce the aching, burning pain. The Plaintiff also stated he slept for approximately 30 minutes before moving to a different position. (R. 45). The Plaintiff testified he did not smoke cigarettes but drank alcohol on occasion. (R. 45-46). McKinney stated he did not have significant problems with his back unless he attempted to bend with frequency or attempt to lift an object. The Plaintiff claimed he would experience a protrusion on his lower left back that occasionally was bothersome to him and sometimes standing or sitting caused him pain. (R. 46).

According to McKinney, he could not sit or stand for extended periods of time and would shift positions frequently due to pain in his lower back or hip. (R. 46). Further, McKinney stated he had a numbing aching pain in his neck as well as his left hand extending from his fingers into his

arm and up into his shoulder. (R. 46-47). The Plaintiff stated he could not hold his arms up over his head for extended periods of time. Additionally, the Plaintiff testified he was financially supported by his ex-wife, daughter, mother and a friend. (R. 47). The Plaintiff further testified he had been sleeping in his car for 3 to 4 months in Hollywood, Florida in an apartment lot. (R. 47-48).

With regard to his mental abilities, McKinney stated concentrating could be a problem because he was unable to "stick to one thing very long" and would become irritable. Further the Plaintiff stated he had difficulty walking at a rapid pace or walking great distances, but did not otherwise have any difficulty walking. The Plaintiff also stated if he walked for a long period of time, his experienced irritation and aching pain around his hip. According to the Plaintiff, he attempted to work in the flea market since the Plaintiff's spinal fusion surgery, but was not productive. (R. 48). The Plaintiff testified he could drive a car and do his own laundry occasionally, and make food for himself. (R. 48-49).

The Plaintiff was asked if he had any difficulties with his memory to which he responded that some things he was unable to remember well, and other things he could not remember, but opined such lapses in memory may be associated with aging. The Plaintiff further asserted he was unable to separate what he could remember from what he could not remember. McKinney testified he stopped doing "little jobs" when he began to experience pain in his neck and arms, but further asserted after his fusion surgery he did not work often. The Plaintiff testified he recalled cutting bushes and experiencing pain in his left arm. (R. 49).

Additionally, the Plaintiff stated he occasionally used a cane since 1979 after he was discharged from the hospital, but as he gets older he uses it more frequently. (R. 49-50). The Plaintiff stated in 1979 he was told to avoid stressful situations because at that time, he had difficulty

controlling his emotions and was told his emotional condition may or may not improve with time. The Plaintiff stated he received food stamps. (R. 50).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. However, a review of the medical records and the specific issues raised by the Plaintiff in his Motion for Summary Judgment shows that the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff had the following severe impairments: cervical spine spondylosis status post cervical spine fusion, lumbar spine osteoarthritis, and status post motor vehicle accident injuries. (R. 14). The ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments; and retained the residual functional capacity to perform a full range of medium work. (R. 14-15). The ALJ further found the Plaintiff had no past relevant work, but considering the Plaintiff's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers within the national economy that the Plaintiff could perform. Therefore, the Plaintiff had not been under a disability as defined in the Social Security Act. (R. 18-19).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th

Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); See also, Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that he/she is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's first point of contention is that the ALJ failed to properly evaluate the

Plaintiff's credibility. Specifically, the Plaintiff argues he developed severe symptoms from his 1979 car accident such as pain and numbness in his left arm and bilateral hands, as well as hip pain while standing or sitting for prolonged periods of time. The Plaintiff contends due to the ALJ's credibility determination, he did not receive a fair and full hearing in accordance with the regulations. The Defendant argues the ALJ gave specific reasons why the Plaintiff was not credible noting in part, the absence of objective evidence.

It is well established that pain alone can be disabling. Walker v. Bowen, 826 F. 2d 996, 1003 (11th Cir. 1987). In determining whether the Plaintiff suffers from disabling pain; the following test must be satisfied:

> [T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

Lamb v. Bowen, 847 F. 2d 698, 702 (11th Cir. 1988).

In the instant case, the first prong of the Lamb test was satisfied as the ALJ found the existence of an underlying medical condition. The ALJ found that the Plaintiff suffered from cervical spine spondylosis, status post cervical spine fusion, lumbar spine osteoarthritis and status post motor vehicle accident injuries, but such impairments were not severe enough to meet or medically equal one of the listed impairments listed in Appendix 1, Subpart P, Regulation No. 4. (R. 14).

The analysis then shifts to the second prong of the test. Disabling pain could be shown in one of two methods. One, by objective medical evidence confirming the severity of the alleged pain

or by showing that the underlying objectively determined medical condition is of a severity which can reasonably be expected to give rise to the alleged pain. Lamb, at 702. Once the ALJ determined that the objective medical evidence did not confirm the severity of the Plaintiff's alleged pain he/she must then look towards the Plaintiff's subjective complaints and determine whether they can reasonable be expected to produce the alleged pain. "Whether or not the condition could be expected to give rise to the complained of pain is a question of fact subject to the substantial evidence standard of review." Lamb, at 702, citing to, Hand v. Heckler, 761 F. 2d 1545, 1549 (11th Cir. 1985); Boyd v. Heckler, 704 F. 2d 1207, 1209 (11th Cir.1983).

The credibility of the Plaintiff's testimony must also be considered in determining if the underlying medical condition is of a severity which can reasonably be expected to produce the alleged pain. Lamb, at 702. If the ALJ discredits subjective testimony, he/she must articulate explicit and adequate reasons for doing so. Wilson v. Barnhart, 284 F. 3d 1219, 1225 (11th Cir.2002). Failure to articulate the reasons for discrediting subjective testimony requires as a matter of law, that the testimony be accepted as true. Id.

The ALJ addressed the Plaintiff's credibility concerning the Plaintiff's limitations and stated as follows:

> In sum, the conclusion that the claimant does not have an impairment or combination of impairments that significantly limits his ability to perform basic work activity is supported by the lack of objective findings. The claimant testified that he could not stand or sit for long period[s]. He also reported that he has to move around a lot. The undersigned noted that at his hearing he did not move around while he was seated. The claimant reported that he could not concentrate and that he had a memory problem; however, at the hearing his memory/recollection and thought process appeared normal. Additionally, Dr. Catano reported at the consultative examination that the claimant was oriented to person, place, and time. His cranial

9

nerves and cerebella function were intact.  He had no sensory o[r] motor function deficits.  The claimant reported that he walked with a cane, but at the consultative examination Dr. Catano reported that the claimant walked normally and without a cane.  Dr. Catano also noted that the claimant apparently last[] worked in December 2008. Furthermore, the claimant's record reflects no actual treatment for his alleged impairments for the alleged period of disability.  The undersigned acknowledges the existence of some limitations; however, these limitations and the claimant's records indicate that they do not prevent him from the performance of work at the residual functional capacity indicated.

(R. 17-18)(citations omitted).

While, an ALJ may not reject a plaintiff's subjective complaints of pain simply by the lack of objective evidence, the allegations of a severe impairment should be supported by medically acceptable clinical and laboratory diagnostic techniques and allegations of pain should be weighed with the overall record which includes clinical data, testimony, demeanor at the hearing, frequency of treatment, response to treatment, use of medications, daily activities, motivations, credibility and residual functional capacity. Watson v. Heckler, 738 F. 2d 1169, 1172-1173 (11th Cir.1984). Further, the claimant's testimony of pain or other subjective symptoms standing alone, are not conclusive evidence of disability. See, Macia v. Bowen, 829 F. 2d 1009, 1011 (11th Cir.1987).

In the instant case, the ALJ specifically stated her reasons for rejecting the Plaintiff's testimony and properly evaluated the Plaintiff's "disabling subjective symptoms considering the Plaintiff's statements, statements by the treating physician, and evidence of how the pain affects the claimant's daily activities and ability to work." quoting East v. Barnhart, 197 Fed.Appx. 899, 904 (11th Cir.2006)(citing 20 C.F.R. 416.929(a)).  The ALJ cited to portions of the record that were inconsistent with the Plaintiff's statements noting the absence of the use of a cane within the medical record, a history of work up to December 2008, and the absence of motor function deficits.  The ALJ

used the Plaintiff's testimony in conjunction with the medical records, as well as the absence of treatment for his impairments during the alleged period of disability to support her findings regarding the Plaintiff's credibility. As such, this Court does not find error.

The Plaintiff's second point of contention is that the ALJ erred in according great weight to the opinion of consulting examiner, Dr. Catano. Specifically, the Plaintiff argues Dr. Catano's examination was incomplete and incompetent, and Dr. Catano did not x-ray the Plaintiff's hip or test the severity of the Plaintiff's radiculopathy. The Defendant argues the consultative examiner was not obligated to order specific tests but performed a comprehensive physical examination that included cervical and lumbar spine x-rays .

The weight assigned to each medical source is dependent on several factors including the nature and extent of the relationship between the medical source and the claimant, the length of the relationship, the consistency of the relationship, as well as other factors such as whether the medical source examined the claimant and the type of treatment relationship they have with the claimant. 20 C.F.R. § 416.927(d). A non-treating source is a "physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have an ongoing treatment relationship [with the claimant]." 20 C.F.R. § 416.927. Generally, the opinions of treating physicians are given more weight than non-examining, non-treating physicians, absent good cause to the contrary. Wilcox v. Comm'r of Soc. Sec., 2011 WL 4375021 (11th Cir.2011).

On July 29, 2009, Dr. John J. Catano, M.D., a general practice physician, performed a medical evaluation of the Plaintiff. (R. 162-168). Dr. Catano noted the Plaintiff drove himself to the office, walked with a normal gait and ambulated without any assistive device. During the evaluation, Dr. Catano noted the Plaintiff's history of his present illness and indicated the Plaintiff had pain in

11

his left hip and lower back, which necessitated the use of a cane for walking long distances. (R. 162). Further, Dr. Catano noted the Plaintiff stated he could lift up to 10 pounds with his left hand. The physician reviewed the Plaintiff's surgical history noting the Plaintiff had undergone a cervical fusion at the C4-C5-C6 portion of the spine in 2003, and a splenectomy and left hip surgery in 1979. (R. 163).

Dr. Catano examined the Plaintiff's neck, chest, lungs, heart, abdominal, extremities, joints, lower back, gait and neurological functions. (R. 163-164). Dr. Catano found there was no tenderness or spasm on the paraspinalis muscle of the lower back. The physician performed a Straight Leg Raising test and found the results of the test were negative, indicating the absence of pathology. [2] The Plaintiff's gait was noted by Dr. Catano to be normal, without a limp and did not require the use of an ambulatory assistive device; the Plaintiff was able to get out of a chair, and on and off the examination table without difficulty; the range of motion in his lower back was to a full 90 degrees of anterior flexion; and he could tandem walk and walk on his heels and toes without difficulty. The physician was noted to have used laboratory data of a cervical spine x-ray that revealed spondylosis, and C3, C4, and C5 anterior spinal fusion. Dr. Catano's diagnostic impression of the Plaintiff was status post neck fusion with chronic pain and left upper arm radiculopathy. (R. 164).

The Plaintiff asserts Dr. Catano did not investigate the Plaintiff's chronic pain and numbness; did not test the Plaintiff to disprove or evaluate the severity of the Plaintiff's radiculopathy; did not give an opinion regarding the Plaintiff's upper left extremity; made no comment on the medical

---

[2]Straight leg raising (SLR) is a procedure for stretching the sciatic nerve to see if the patient's radicular symptomatology is reproduced. Each hip is alternately flexed with the knee extended; the extent to which each leg can be lifted is noted. Normally, the leg can be raised some 70 to 80 degrees without discomfort if there is no pathology. Attorneys Med. Advisor § 71:8 (2012).

necessity of the Plaintiff's use of the cane; and did not comment on the Plaintiff's ability to push or pull weight.

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir.2001). In the instant case, consulting examiner Dr. Catano was under no burden to prove that the Plaintiff suffered from disabling impairments. Rather, the consulting physician appropriately examined the Plaintiff and documented his findings for consideration before the ALJ. Dr. Catano conducted a medical evaluation of the Plaintiff, complete with findings of the Plaintiff's past medical history as well as a physical examination of the systems of the body.

Moreover, while the Plaintiff asserts that the consulting examiner did not comment on the medical necessity of McKinney's use of his cane, the examination did in fact state the Plaintiff ambulated without any assistive device at the time of the examination, he did not have a limp, and his gait was normal. And in the absence of the use of an assistive device, the examiner was under no obligation to comment on the medical necessity of its use. [3]

Further, the consulting physician appropriately documented the Plaintiff's radiculopathy, noting in his final diagnostic impression of the Plaintiff's condition that the Plaintiff had left arm radiculopathy and documented the Plaintiff's statement that he could lift up to 10 pounds with his left arm and quit his job in December 2008 due to the numbness and pain in the same location.

The ALJ found Dr. Catano's determinations were credible because they were strongly

---

[3]The Range of Motion Report Form to which the Plaintiff refers contains directions of the evaluation of a claimant's gait and station and states the following: "Include supine and seated straight leg raising, and heel and toe walking. If an assistive device is used for ambulation, comment on its medical necessity and the patient's ability to walk without it." (R. 167).

supported by medical findings and treatment progress noted contained within the record and subsequently accorded the opinion of Dr. Catano great weight. The Court finds the ALJ accorded the correct weight to the opinion of Dr. Catano, and thus, no error is present.

## III.  CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ was supported by substantial evidence and that the correct legal standards were applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be **AFFIRMED**. Accordingly, the Motion for Summary Judgment filed by the Plaintiff (D.E. #19) should be **DENIED**; the Motion for Summary Judgment filed by the Defendant (D.E. #22) should be **GRANTED**; and **FINAL JUDGMENT** should be entered in favor of the Defendant, Michael J. Astrue, Commissioner of Social Security and against the Plaintiff, Kenneth L. McKinney.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Robin S. Rosenbaum, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this __16__ day of July, 2012.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE